UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVE ANCTIL, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00107-JAW |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

In this action, Plaintiff Steve Anctil, Jr., an inmate in the custody of the Maine Department of Corrections, alleges that the Department Commissioner (Defendant Fitzpatrick), the Warden of the Maine State Prison (Defendant Liberty), the former warden and current Associate Commissioner (Defendant Bouffard), the Deputy Warden (Defendant Ross), and the Grievance Review Officer (Defendant Atkinson) violated his constitutional rights.   (Second Amended Complaint, ECF No. 31.)

Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 4), which application the Court granted (ECF No. 7).   In accordance with the *in forma pauperis* statute, a preliminary review of Plaintiff's complaint is appropriate.  28 U.S.C. § 1915(e)(2).  Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

Following a review of the pleadings, I recommend the Court dismiss all claims asserted against all Defendants, except for one claim Plaintiff has asserted against Defendant Ross.

## BACKGROUND

Previously, I reviewed Plaintiff's pleadings and recommended dismissal of Plaintiff's complaint because Plaintiff failed to state an actionable claim. (ECF No. 9.)  On July 7, 2016, Plaintiff filed a pleading that the Court construed to be an amended complaint. (ECF No. 31.)  In this pleading, Plaintiff includes additional facts regarding the matters that caused him to engage in grievance activity.  More specifically, Plaintiff attempts to assert claims of loss of property, lack of protection from harm caused by other prisoners, lack of library access, inadequate medical treatment, receipt of opened mail from legal organizations, denial of confidential phone communications with counsel, temporary denial of access to a newspaper, nighttime noise, inadequate laundry, and lack of hot water.  Based on the allegations in the amended complaint, Plaintiff purports to assert claims under the First Amendment (access to court, legal mail, and retaliation), the Fourth Amendment (monitored legal telephone calls), the Eighth Amendment (failure to protect, inadequate medical services, noise, and unsanitary conditions), and the Fourteenth Amendment (failure to compensate for damaged or lost property and improper charges to prison account).  Plaintiff requests declaratory relief and an award of money damages.

## STANDARD OF REVIEW

When a party is proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines," *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B).  "Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  Similarly, a lawsuit by a prisoner against a governmental entity and its officers is

2

subject to dismissal, *sua sponte*, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez– Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 569 n. 14). Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## DISCUSSION

### A.    First Amendment (access to courts, legal mail, retaliation, newspapers)

#### 1.    Access to courts

Prisoners have a right under the United States Constitution to meaningful access to the courts. "The right of access is a discrete, constitutional right, derived from various constitutional

sources [including] the due process clause, the privileges and immunities clause, and the First Amendment." *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986) (per curiam) (citations omitted). To state a claim for denial of access to the courts, a plaintiff cannot merely allege that prison administrators have provided insufficient access to legal materials. As explained by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996), the "role of the courts [is] to provide relief to claimants, … who have suffered, or will imminently suffer, actual harm." *Id.* at 349. In other words, it is not the role of this Court to dictate the amount of law library or computer access prison administrators must provide to prisoners, but the Court's responsibility is to address the claims in which prisoners allege the existence of conditions that have actually denied or will imminently deny "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). *See also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004).

Plaintiff alleges that he mailed a request to the prison librarian on September 15, 2015, for legal materials regarding a civil matter pending in Lewiston District Court[1] and a conditions of confinement claim he intended to file. According to Plaintiff, the prison librarian denied his request because Plaintiff was then subject to disciplinary segregation. Plaintiff asserts that at the time he had more than seven months to serve in segregation. Plaintiff maintains the librarian informed him that he should request an extension of time from the courts if there was a deadline he could not meet. (Second Am. Complaint, Statement of Claims at 3, ECF No. 31-1.) Plaintiff alleges he mailed Defendant Liberty and Defendant Fitzpatrick a letter regarding the issue, but never received a response.

---

[1] Plaintiff alleges in his second amended complaint that the Lewiston District Court case involved "a family matter." (Second Am. Complaint, Statement of Claims at 4.)

Although Plaintiff alleges the denial of court access and identifies a then-pending legal matter, Plaintiff fails to assert a constitutional claim because he did not assert any facts that would suggest that the state court matter involved a constitutional right, or that Plaintiff has suffered actual harm in the legal matter due to the alleged lack of access to legal materials.[2]  Plaintiff, therefore, has not asserted a claim based on the denial of access to court.

### 2.     Legal mail

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.*

Plaintiff alleges that he received mail from the Volunteer Lawyers Project "regarding legal materials [he] requested for a pending family matter civil case," and that the mail was already opened.  (Second Am. Compl. at 4.)  He also alleges that he received opened mail from the Maine Human Rights Commission "regarding legal materials [he] requested for further condition of confinement claims."  (*Id.*)  Plaintiff makes similar allegations regarding mail he received from the Office for Civil Rights and the Center for Constitutional Rights.  (*Id.* at 6 – 7.)

Prisoners have a right to communicate in confidence with counsel, including in civil matters.  When mail is involved, the right is generally preserved by opening properly identified legal mail in the presence of the prisoner.  *Wolff v. McDonnell*, 418 U.S. 539, 576 – 77 (1974); *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 643 (6th Cir. 2015),

---

[2] To the extent Plaintiff also attempts to assert a lack of access claim based on the conditions of confinement, Plaintiff similarly has failed to assert any facts that would support a claim.  As explained below, Plaintiff's allegations regarding the conditions of his confinement are not actionable.

*cert. denied*, 136 S. Ct. 1246, 194 L. Ed. 2d 184 (2016).  The Constitution, however, does not guarantee that all mail sent to a prisoner by a civil rights or legal aid organization be opened in the presence of the prisoner.  *Jenkins v. Huntley*, 235 Fed. App'x 374, 376 (7th Cir. 2007) (affirming summary dismissal of claim based on opening and inspection of "legal mail" from state attorney's office and from attorney discipline commission); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights.  Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.")  *See also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) ("The opening of incoming legal mail outside an inmate's presence for the purpose of inspecting for contraband does not violate a prisoner's constitutional rights." (applying *Thornburgh v. Abbott*, 490 U.S. 401, 413 – 14 (1989), and *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Here, Plaintiff has not alleged that mail from an attorney engaged to represent him was opened outside his presence.  Furthermore, even if the Court were to construe the constitutional protection to require Plaintiff to be present under the circumstances he described, Plaintiff has not asserted any facts that would support the conclusion that he was prejudiced by the opening of his mail.

### 3.    Retaliation

To establish a claim of first amendment retaliation, an inmate must allege (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the inmate's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First

Amendment rights.  *Hannon v. Beard,* 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus–X v. Blatter,* 175 F.3d 378, 398 (6th Cir. 1999).

Plaintiff alleges that Defendant Bouffard, evidently when he was the warden of the Maine State Prison, "failed to protect [Plaintiff] against known retaliation by prison staff for exercising [the] right of access to the courts."  (Request for Relief at 1, ECF No. 31-2.)  A supervisory officer is not liable under 42 U.S.C. § 1983 for every unconstitutional act of a subordinate.  To be liable, there must be an affirmative link between the supervisor and the alleged conduct.  *Maldonado v. Fontanes,* 568 F.3d 263, 275 (1st Cir. 2009).  An affirmative link could be established through evidence of "supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."  *Id.*

Plaintiff has not alleged any facts that would support a finding of the necessary affirmative link between Defendant Bouffard and the alleged conduct.  Plaintiff, therefore, has failed to state an actionable claim against Defendant Bouffard.[3]

### 4.     Newspapers

Courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail.  *Davis*, 320 F.3d at 351 (citing, inter alia, *Thornburgh*, 490 U.S. at 413).  Newspapers are a type of non-legal, incoming mail and, as such, receive less protection than legal mail or outgoing correspondence.  While the

---

[3] To the extent Plaintiff has attempted to assert a claim against Defendant Bouffard based on Defendant Bouffard's review of the grievances Plaintiff filed, the mere review of a grievance and failure to provide relief does not subject a prison official to § 1983 liability.  "The creation of procedural guidelines to channel the decisionmaking of prison officials" does not, "without more," give rise to a federal right.  *Hewitt v. Helms*, 459 U.S. 460, 471 (1983).  The Constitution does not guarantee an effective grievance procedure and the existence of a grievance procedure does not confer upon prisoners any substantive right.  *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (collecting cases); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases).  In this case, Plaintiff has not alleged any facts from which a fact finder could conclude that Defendant Bouffard violated any of Plaintiff's constitutional rights during the grievance process.

Constitution protects a prisoner's right to receive and read newspapers, *Beard v. Banks*, 548 U.S. 521, 543 (2006) (Stevens, dissenting) (citing *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes … the right to receive, the right to read and freedom of inquiry ….")), short-term, non content-based disruption in access to a newspaper does not rise to the level of a constitutional violation, *Rowe v. Shake*, 196 F.3d 778, 780 – 782 (7th Cir. 1999); *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987); *Harris v. Arpaio*, No. 2:08-cv-1255, 2008 WL 3845416, at *4 (D. Ariz. Aug. 18, 2008).[4]

　　As alleged, Plaintiff was denied the Lewiston Sun Journal for two weeks while housed in the special management unit (SMU).  Evidently, Plaintiff had a subscription to the paper.  (PageID # 120: "[S]taff refused to give me my Lewiston Sun Journal newspapers.").[5]  According to Plaintiff, other prisoners in the SMU continued to receive their newspapers.  (*Id.*)  The denial of newspaper access for a consecutive two-week period while he was in segregation constitutes the relatively brief interruption that does not violate the constitution.  *Sizemore*, 829 F.2d at 610 ("[A]n isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment."); *Rowe*, 196 F.3d at 780 (7th Cir. 1999) (affirming sua sponte dismissal where the allegations indicated that multiple articles of mail were delayed, including 10 items delayed by 14 days or less); *Langlois v. Dane Cty. Sheriffs Office & Deputies*, No. 3:08-cv-541, 2008 WL 4722993, at *1 (W.D. Wis. Oct. 23, 2008) (dismissing claim alleging 10-day denial of all incoming mail during period of "lockdown").

---

[4] Greater restrictions on the receipt of newspapers and magazines can comply with the Constitution when they are supported by a legitimate penological objective associated with a particular inmate or inmate classification.  *Beard*, 548 U.S. at 533.

[5] While prisoners have the right to receive subscription news publications, the First Amendment does not impose an affirmative duty to supply inmates with a newspaper.  *Rupert v. Mills*, No. 3:14-cv-161, 2014 WL 5473532, at *2 (E.D. Ark. Oct. 28, 2014).

**B.      Fourth Amendment (monitored phone conversations)**

Plaintiff's phone-related claim is another component of his access to courts claim, rather than a fourth amendment claim. *See*, *e.g.*, *McIntosh v. United States*, No. 7:14-CV-07889, 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016). Telephone communications in prison are subject to reasonable regulation. *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir. 1997) ("As a prison inmate, Gilday can identify no federal or state right—constitutional or otherwise—to utilize a prison phone on his own terms."). Inmates who refuse to consent to monitoring of phone conversations retain the ability to communicate by mail. *Id.* at 294. A constitutional violation arises only if the inmate is deprived of alternative methods of communication. *Id.*; *McIntosh*, 2016 WL 1274585, at *23 (collecting cases and citing, *inter alia*, *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[R]estrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel.")).

Here, Plaintiff alleges that Defendant Fitzpatrick violated his rights when he failed to provide him with "non-recorded and non-monitored legal telephone calls." (Request for Relief at 1.) Plaintiff contends he was not allowed to place a phone call to the Office of Civil Rights, but was told that he could write instead. (Second Am. Compl. at 5.) Additionally, Plaintiff was informed that all legal calls to his attorney would have to be made on phones that were monitored. (*Id.*)

Plaintiff's alleged facts do not support a claim based on Defendants' telephone policy. Plaintiff specifically alleges that he was advised of and provided an alternative means of communication, which satisfies the Constitution.

C.      **Eighth Amendment (failure to protect, failure to treat, unsanitary conditions, noise)**

1.      **Failure to protect**

The Cruel and Unusual Punishment Clause of the Eighth Amendment, as applied to the states through the Fourteenth Amendment, imposes a duty on prison officials to protect inmates from violence at the hands of other inmates. *Lakin v. Barnhart*, 758 F.3d 66, 70 (1st Cir. 2014). "That duty has its origins in the forced dependency of inmates[.]" *Giroux v. Somerset Cty.*, 178 F.3d 28, 31 (1st Cir. 1999). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1970) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).

Under the law, however, not every incident of prisoner-on-prisoner violence that results in injury gives rise to constitutional liability. *Lakin*, 758 F.3d at 70. To raise a genuine issue of constitutional liability, a plaintiff must demonstrate both that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the defendant "acted, or failed to act, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). In other words, a plaintiff must satisfy both an objective standard (substantial risk of serious harm) and a subjective standard (deliberate indifference) in order to prove a claim of deliberate indifference. *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff alleges that in September 2014 he was relocated to "Charlie Pod" after notifying the pod officer that he believed he would not be safe in that pod. According to Plaintiff, the officer told him he would be moved after the officer placed "a phone call." (Second Am. Compl., Statement of Claim, at 1, ECF No. 31-1.) A week later, Plaintiff was assaulted by an inmate in Charlie Pod with "two combination locks on a belt, and stabbed in the chest." (*Id.*) Several days later, Plaintiff addressed his concerns "with staff." (*Id.* at 2.) In October 2014, Defendant Atkinson "declined to investigate" and stated that Plaintiff should have presented the issue sooner. (*Id.*) In November 2014, Plaintiff was again assaulted by the same inmate. (*Id.*) In May 2015, Plaintiff informed Defendant Fitzpatrick that he was advised he would be stabbed again and in June 2015, Defendant Ross responded that Plaintiff's concerns "don't require further review, as [he] created [his] own issues." (*Id.*)

Plaintiff asserts his failure to protect claim against Defendants Bouffard, Fitzpatrick and Ross. He also asserts the claim against Defendants Liberty and Ross based on a failure to train. (Request for Relief at 1 – 2, ECF No. 31-2.) Plaintiff, however, has not asserted facts that would support an inference that Defendants Bouffard, Fitzpatrick or Liberty demonstrated deliberate indifference toward a serious risk of harm to Plaintiff. Given the information alleged to have been provided to Defendant Ross, and given Defendant Ross's alleged response, Plaintiff has alleged facts sufficient to assert a claim against Defendant Ross.[6]

---

[6] At this stage of the proceedings, it is unnecessary to distinguish between a typical supervisory liability claim and the failure to train claim. In the generic supervisory context, the applicable standard "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995)). In the failure to train context, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011). The presence of a pattern, rather than an isolated instance, is ordinarily required because "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 – 408 (1997) (holding that solitary failure of sheriff to follow pre-hire employee screening procedure did not support the inference of deliberate indifference that is required to support a municipal liability claim). As the Court noted in *Brown*, the "continued

2.      **Failure to treat**

The Due Process Clause imposes on the states the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 −106 (1976)).  To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard.  *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard focuses on the seriousness of the risk of harm to the inmate's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention.  *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard involves the culpability of the defendant.  To establish liability, a plaintiff must establish that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable."  *Feeney*, 464 F.3d at 162 (quoting

---

adherence to an approach that [policy-making officials] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407.  Without the pattern, generally, the inference of culpability greater than negligence is strained.  *Id.*

*Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).  The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response."  *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).  In other words, the subjective standard focuses on whether the Defendants had a "purposeful intent" to neglect Plaintiff's serious medical needs.  *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle*, 429 U.S. at 105).  A showing of such an intent requires evidence that the alleged absence or inadequacy of treatment was intentional.  *Id.* (citing *Estelle*, 429 U.S. at 105 (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation), and *Watson,* 984 F.2d at 540 ("The courts have consistently refused ... to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")).  "The typical example of a case of deliberative indifference would be one in which treatment is denied in order to punish the inmate."  *Id.* (internal quotation marks omitted).  However, a showing of "wanton disregard" will also raise a genuine issue for trial.  *Id.* (quoting *Battista v. Clarke,* 645 F.3d 449, 453 (1st Cir. 2011)).

Deliberate indifference thus must be based on much more than ordinary negligence. The First Circuit has explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

Plaintiff's claim is based on the following allegations:

On April 15, 2015, Plaintiff was denied care for a painful tooth when corrections staff did not do anything about "medical's" statement that he would not receive treatment for the issue. Plaintiff grieved the matter with Defendant Atkinson and eventually wrote to Defendants Ross, Liberty, and Fitzpatrick about the matter, without receiving a response. (Second Am. Complaint, Statement of Claims at 2, ECF No. 31-1.)

On October 15, 2015, a chemical agent was deployed somewhere in the pod outside of Plaintiff's cell. Plaintiff experienced chest pain, difficulty breathing, and dizziness, and he spit up some blood. An officer advised Plaintiff to put a damp cloth over his face and told him that everybody in the area was having symptoms and to stop hitting his button. (*Id.* at 3.) Defendants Atkinson and Liberty did not afford any relief through the grievance process. (*Id.*)

On December 10, 2015, "staff" refused to bring Plaintiff to a scheduled physical therapy session. Plaintiff reported the matter and indicated that he had missed the prior 14 appointments as well. Defendants Atkinson, Bouffard ("for Fitzpatrick"), and Liberty responded that Plaintiff was not brought to the PT session due to a "communication breakdown." They did not address Plaintiff's assertion that he missed 14 earlier appointments. (*Id.* at 5.)

On February 3, 2016, Plaintiff reported that medical staff were not seeing him for a neck/shoulder pain condition. On February 9, the director of nursing responded that it was unfortunate Plaintiff had needed to wait and that he was being referred "for further assessment of this chronic issue." (*Id.* at 6 – 7.) On February 19, Defendant Atkinson responded that the matter was not a constitutional violation. (*Id.* at 7.)

On February 16, 2016, medical staff refused Plaintiff a prescription medication. (*Id.*) On March 7, Defendant Atkinson responded that the matter was not a constitutional violation. (*Id.*)

Plaintiff asserts his medical care-related claim against Defendants Atkinson, Bouffard, Fitzpatrick, and Liberty. (Request for Relief, ECF No. 31-2.) Plaintiff does not allege facts that reflect the alleged denial of care exposed him to a substantial risk of serious damage to his future health. Furthermore, Plaintiff has not asserted that Defendants were aware of any such risk, or that Defendants acted or failed to act with the purposeful intent to neglect Plaintiff's serious

medical needs.  Accordingly, Plaintiff has failed to state a deliberate indifference claim based on the denial of medical care.

### 3.    Lack of clean linen and hot water; nighttime noise (conditions of confinement)

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993).  Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable.  *Farmer*, 511 U.S. at 832.  Cruel and unusual punishment consists of the denial of "the minimal civilized measure of life's necessities" assessed based on "the contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff's conditions of confinement claim is based on three conditions, which conditions evidently coincided with a placement in the SMU.  On January 21, 2016, Plaintiff informed staff that "night shift" workers were intentionally slamming the SMU entrance/exit door throughout the night, causing sleep deprivation.  Defendant Atkinson responded to Plaintiff's grievance advising Plaintiff that his constitutional rights were not violated.  (Second Am. Complaint, Statement of Claim at 6.)  On January 26, 2016, Plaintiff informed staff that he was not allowed to exchange dirty linen "for weeks/months at a time."  In addition, on January 28, Plaintiff notified staff that he was being denied hot water while in the SMU.  Defendant Atkinson responded that Plaintiff's constitutional rights were not being violated.  (*Id.*)  Citing the conditions, Plaintiff asserts a claim

against Defendants Atkinson and Liberty under the Eighth Amendment.[7] (Request for Relief at 1 – 2.)

The denial of sanitary conditions, particularly when prolonged, can violate contemporary standards of decency. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The mere deprivation of clean linen and hot water for weeks/months, however, does not constitute inhumane conditions nor has Plaintiff suggested how the deprivation presented a serious risk to Plaintiff's health. Noise intended to prevent sleep also can violate the Eighth Amendment. *Palermo v. Wrenn*, No. 1:11-cv-337, 2012 WL 405493, at *3 (D.N.H. Feb. 8, 2012), *report and recommendation approved sub nom. Palermo v. NH Dep't of Corr., Com'r*, 2012 WL 1415118 (Apr. 20, 2012). Plaintiff, however, has not asserted facts regarding the duration of the conduct or the manner in which the conduct presents a serious risk to his health.[8] Accordingly, Plaintiff's allegations do not satisfy the objective prong of the deliberate indifference standard.

Likewise, Plaintiff's allegations do not support a finding that either Defendant Atkinson or Defendant Liberty subjected Plaintiff to the deprivation of humane conditions of confinement, that either Defendant exercised supervisory oversight in a manner that would constitute encouragement, condonation, or acquiescence toward such deprivation, or that either Defendant knew of a serious risk to Plaintiff's health and was deliberately indifferent toward the risk. Plaintiff thus has also failed to satisfy the subjective prong of the deliberate indifference standard.

---

[7] Technically, Plaintiff does not assert his noise-related claim against Defendant Atkinson, only his claim concerning clean linen and hot water. (Second Am. Complaint, Request for Relief at 2, ECF No. 31-2.)

[8] Even in combination, Plaintiff's allegations do not describe a sufficiently serious combination of adverse conditions to support a cruel and unusual punishment claim. *Gray*, 826 F.3d at 1005 (explaining that conditions of confinement should be considered in combination).

**D.      Fourteenth Amendment (compensation for lost or damaged property, improper charges to prison account)**

The Fourteenth Amendment protects individuals from the deprivation of property without due process of law.  However, the loss of prisoner property due to a random, unauthorized act by a corrections officer does not offend due process.  *Parrat v. Taylor*, 451 U.S. 527, 541 (1981).  In fact, a constitutional deprivation is not established even if the loss or destruction of property is the product of intentional misconduct.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In such circumstances, "predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur."  *Id.*  A federal cause of action exists only if the deprivation is the product of an established state procedure, or if state law provides the prisoner with no meaningful post-deprivation remedy for the loss.  *Id.* at 532 – 33; *Lowe v. Scott,* 959 F.2d 323, 340 (1st Cir. 1992).

Plaintiff's second amended complaint asserts the following facts regarding the loss of personal property:

> On June 7, 2014, the use of chemical agents on Plaintiff's roommate destroyed some of Plaintiff's personal property and he was not fully reimbursed their value. (Second Am. Complaint, Statement of Claim at 1.)

> On August 13, 2014, someone made a wrongful charge against Plaintiff's prison account.  (*Id.*)

> On November 14, 2014, Plaintiff returned to general population following a stay in the SMU and roughly $250 worth of personal property was missing.  Plaintiff received compensation for only two items.  (*Id.* at 2.)

> On July 19, 2015, someone made unlawful withdrawals from Plaintiff's prison account.  Defendants Atkinson, Fitzpatrick, and Ross agreed that the withdrawals should not have occurred, but also that Plaintiff's request for reimbursement was unreasonable.  (*Id.* at 3.)

> On October 9, 2015, officers either lost or "contrabanded" items of Plaintiff's personal property following a cell search.  Defendants Atkinson, Fitzpatrick, and Liberty denied Plaintiff relief through the grievance process.  (*Id.* at 3 – 4.)

On October 20, 2015, Plaintiff's personal sneakers went missing after a cell search. (*Id.* at 4.)   Plaintiff's sneakers were never replaced and he received no reimbursement.  (*Id.*)

On February 14, 2016, the business office unlawfully charged Plaintiff's prison account for documents he requested that the Court required him to include with his complaint.  (*Id.* at 7.)  Defendant Atkinson informed Plaintiff that the matter did not concern a constitutional right.  (*Id.*)

Plaintiff's claims regarding the loss of property arise from circumstances involving random, unauthorized acts, not from the application of a state procedure established to authorize prison administrators to deprive a prisoner of his property.  The issue, therefore, is whether state law provides Plaintiff with a meaningful post-deprivation remedy for the allegedly wrongful loss of property.

The Maine Law Court has recognized that prisoners can pursue court appeals of administrative rulings made by the Department of Corrections concerning prisoner grievances. *Fleming v. Comm'r Dept. of Corr.,* 2002 ME 74, ¶ 9, 795 A.2d 692, 695 (Maine Rule of Civil Procedure 80C(i) allows not only a review of final agency action, but also an independent claim for damages where appropriate).  In addition, under the Maine Tort Claims Act, governmental entities are liable for property losses arising from the operation or maintenance of any public building.  14 M.R.S. § 8104-A(2).  Maine law thus affords an individual an adequate remedy for the negligent or intentional destruction of personal property in the form of a common law conversion claim.  *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800.

Because Plaintiff's allegations describe only random and unauthorized deprivations of property, and because Maine law affords a meaningful post-deprivation remedy, Plaintiff fails to state a procedural due process claim.

E.     **Defendant Atkinson**

In addition to the deficiencies regarding Plaintiff's other claims against Defendant Atkinson, Plaintiff's claims based on Defendant Atkinson's management of Plaintiff's grievances also fail.  Plaintiff's allegations involve Defendant Atkinson's resolution of grievances at the initial level of review.  An officer's mere denial of a grievance does not establish that the officer is liable for the underlying deprivation.  *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) ("[Plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (holding that the denial of administrative grievances does not give rise to liability absent evidence of direct participation, encouragement, authorization, or acquiescence in the alleged violation).  Because, as outlined above, Plaintiff has failed to alleged sufficient facts to support liability against Defendant Atkinson based on the incidents that are the subject of the grievances, Plaintiff cannot sustain a claim based on Defendant Atkinson's handling of the grievances.

CONCLUSION

Based on the foregoing analysis, after a review pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a), I recommend the Court dismiss Plaintiff's claims except Plaintiff's failure to protect/failure to train claim against Defendant Ross.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

19

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of October, 2016.