UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVE ANCTIL, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00107-JAW |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND[1]

In this action, Plaintiff Steve Anctil, Jr., an inmate in the custody of the Maine Department of Corrections, alleges Defendants violated his constitutional rights. (Second Amended Complaint, ECF No. 31.)

On October 24, 2016, after a review of Plaintiff's amended complaint in accordance with 28 U.S.C. § 1915 and 1915A, I recommended the Court dismiss Plaintiff's claims except for his claim against Defendant Troy Ross, which claim involved the alleged failure to protect Plaintiff from serious harm posed by other prisoners. (ECF No. 36.)

---

[1] Although a motion to amend is within the magistrate judge's authority (*Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000)), because the motion is directly related to, and perhaps filed in response to, the Recommended Decision that I previously issued upon review pursuant to 28 U.S.C. §§ 1915 and 1915A, and given that the Court's review the recommended decision and the decision on the motion to amend would determine which claims Plaintiff can pursue, I concluded it was appropriate to issue a recommended decision on the pending motion to afford the Court, in the event a party objects to this recommendation, the opportunity to apply the same standard of review for both decisions.

1

On January 20, 2017, Plaintiff filed a motion requesting leave to supplement his amended complaint. (ECF No. 46.) Following review of Plaintiff's proposed supplemental pleading, I recommend the Court deny Plaintiff's motion to amend as futile.

## DISCUSSION

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. Thereafter, leave of court is required, though leave should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962). Because Plaintiff previously amended his complaint, Plaintiff must obtain leave of court to further amend his pleading. To the extent a court determines a claim advanced or supplemented by means of a motion to amend would be futile because the facts fail to state a claim for which relief may be granted, the court can deny the motion. *Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009).

In his first amended complaint (ECF No. 31), Plaintiff cited a number of incidents he maintains resulted in the violation of his federal rights, which incidents occurred between the dates of December 5, 2015, and March 29, 2016. Through his proposed amendment, Plaintiff identifies additional incidents occurring between April 12, 2016, and January 4, 2017. A review of Plaintiff's proposed supplemental pleading suggests Plaintiff attempts to assert claims based on the denial of meaningful access to the courts, the interference with his right to send and receive mail, the conditions of his confinement, the unlawful imposition of punishment, and the loss of good time credit.

### A.     Access to the Courts

Prisoners have a right under the United States Constitution to meaningful access to the courts. "The right of access is a discrete, constitutional right, derived from various constitutional sources [including] the due process clause, the privileges and immunities clause, and the First Amendment." *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986) (per curiam) (citations omitted). To state a claim for denial of access to the courts, a plaintiff cannot merely allege that prison administrators have provided insufficient access to legal materials. As explained by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996), the "role of the courts [is] to provide relief to claimants, … who have suffered, or will imminently suffer, actual harm." *Id.* at 349. In other words, it is not a court's role to dictate the amount of law library or computer access prison administrators must provide to prisoners, but a court's responsibility is to address the claims in which prisoners allege the existence of conditions that have actually denied or will imminently deny "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). *See also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). Plaintiff describes several situations that might implicate his right of access to the courts.

#### *1.     Seizure of papers*

Plaintiff asserts members of the prison staff seized or disarranged Plaintiff's legal paperwork/documents/materials. (Supp. ¶¶ 1, 33, 59.) Given the absence of any facts to support a finding that Defendants' conduct prevented Plaintiff from presenting a particular

3

claim to the courts, the alleged seizure or unauthorized arrangement of Plaintiff's documents does not constitute an actionable claim.[2]

### 2. *Undelivered court mail*

Plaintiff alleges prison staff members refused to allow Plaintiff to mail certain "legal mail" addressed to this Court and the Maine Superior Court regarding the conditions of confinement. (*Id.* ¶¶ 2, 4, 15, 21, 22, 29, 31, 41.) According to Plaintiff, Officer Fillebrown misplaced two items of mail (one to the Maine Attorney General and another to this Court), which were later found under other papers on Sergeant Perry's desk. (*Id.* ¶¶ 3 – 4.) In addition, Plaintiff asserts some of his mail to and from this Court was not delivered. (*Id.* ¶ 73.)

Given the absence of any facts regarding the substance of the mail and any facts to support a finding that Defendants' conduct prevented Plaintiff from presenting a particular claim to the courts, the allegations regarding the misplaced mail or undelivered mail do not state a claim for violation of a federal right.

### 3. *Phone calls*

Plaintiff asserts he must demonstrate he has a court deadline or hearing within two weeks of any request for a legal phone call. (*Id.* ¶¶ 8, 17, 20.) Plaintiff asserts he was not allowed to take certain phone calls over a private line, including a call from counsel in a civil matter. (*Id.* ¶¶ 6, 7.)

---

[2] Plaintiff has no expectation of privacy in a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984). Therefore, Plaintiff's allegation is also not cognizable as a Fourth Amendment claim.

Plaintiff's phone-related claim is a component of his access to courts claim. *See*, *e.g.*, *McIntosh v. United States*, No. 7:14-CV-07889, 2016 WL 1274585, at *23, 2016 U.S. Dist. LEXIS 44290, at *78 – 81 (S.D.N.Y. Mar. 31, 2016). Telephone communications in prison are subject to reasonable regulation. *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir. 1997) ("As a prison inmate, Gilday can identify no federal or state right—constitutional or otherwise—to utilize a prison phone on his own terms."). Inmates who refuse to consent to monitoring of phone conversations retain the ability to communicate by mail. *Id.* at 294. A constitutional violation arises only if the inmate is deprived of alternative methods of communication. *Id.*; *McIntosh*, 2016 WL 1274585, at *23, 2016 U.S. Dist. LEXIS 44290, at *79 – 80 (collecting cases and citing, *inter alia*, *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[R]estrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel.")).

Plaintiff has not alleged facts which suggest the prison's regulations regarding telephone calls are inherently unreasonable. In addition, to the extent Plaintiff cites the monitoring of his calls with counsel, Plaintiff has not alleged the telephone calls are his only access to counsel. Finally, Plaintiff has not asserted any facts to suggest he has been denied the ability to present a particular claim to the courts. Plaintiff thus has not asserted an actionable federal claim.

### *4. Photocopies*

Plaintiff asserts Defendants have refused to make copies of various papers for Plaintiff, including some to be filed with this Court, based on limitations placed on the number of copies available to Plaintiff (i.e., 100 free pages per month.) Evidently, Plaintiff

maintains his "legal mail" should always be copied without cost and should not count against the 100 page limit on free copies. (*Id.* ¶¶ 13, 53, 56, 58, 67 – 69.) Based on Plaintiff's allegations, Defendants consider papers sent to Plaintiff by the Maine Law and Legislative Reference Library to be subject to the 100-page limit on free copies (i.e., they will charge Plaintiff for copies received that exceed the monthly limit). (*Id.* ¶ 37.) Plaintiff also alleges on one occasion, the librarian provided copies Plaintiff did not want. (*Id.* ¶ 71.)

Given the absence of any facts to support a finding that Defendants' photocopy policy prevented Plaintiff from presenting a particular claim to the courts, Defendants' implementation and enforcement of the policy does not constitute an actionable claim.

### 5. *Legal research*

Plaintiff alleges Defendants denied him access to legal materials for as long as four days. (*Id.* ¶ 86.) Plaintiff also asserts Defendants withheld as contraband case law and court rules sent to Plaintiff by his family. (*Id.* ¶ 43.) Because Plaintiff has not alleged Defendants' conduct prevented him from asserting a particular claim in court, Plaintiff has not alleged an actionable federal claim.

### B. Interference with Mail

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal

6

mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.*

Prisoners have a right to communicate in confidence with counsel, including in civil matters. When mail is involved, the right is generally preserved by opening properly identified legal mail in the presence of the prisoner. *Wolff v. McDonnell*, 418 U.S. 539, 576 – 77 (1974); *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 643 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1246, 194 L. Ed. 2d 184 (2016). The Constitution, however, does not guarantee that all mail sent to a prisoner by a civil rights or legal aid organization be opened in the presence of the prisoner. *Jenkins v. Huntley*, 235 Fed. App'x 374, 376 (7th Cir. 2007) (affirming summary dismissal of claim based on opening and inspection of "legal mail" from state attorney's office and from attorney discipline commission); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.") *See also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) ("The opening of incoming legal mail outside an inmate's presence for the purpose of inspecting for contraband does not violate a prisoner's constitutional rights." (applying *Thornburgh v. Abbott*, 490 U.S. 401, 413 – 14 (1989), and *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

*1.  Receipt of opened mail*

Plaintiff alleges he received opened "legal mail" from the following individuals and institutions:

- Federal Investigative Services
- Child and Family Services
- Secretary of State
- Department of Public Safety
- Rockland Chief of Police
- Knox County Court
- State Fire Marshal
- State Auditor
- Hancock County Court
- Department of Environmental Protection
- State Law and Legislative Reference Library
- Rockland Police Department
- Knox County Sheriff, and
- This Court

(*Id.* ¶¶ 5, 34, 52, 57, 77, 80, 83, 88, 90.)

Plaintiff has not described in any meaningful way the nature of the written communications with the individuals and institutions. Plaintiff, therefore, has not alleged

sufficient facts to support a finding that the communications were intended to be confidential and thus within the scope of protected legal mail.

### 2. *Law firm mail*

Plaintiff alleges he received returned mail (undeliverable), which mail he had sent to the Law Office of West End Legal, LLC, and which mail was returned to him opened. (*Id.* ¶ 16.) The mere fact the letter was addressed to a law firm does not mean the letter is legal mail. "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." *Sallier*, 343 F.3d at 874. Plaintiff has not alleged any facts to support a finding that West End Legal, LLC, represented him on any matter, that the alleged opening of the mail compromised a confidential communication, or that the opening of the mail in any way interfered with Plaintiff's ability to access the courts or otherwise prosecute a claim.

### 3. *Letters never sent*

According to Plaintiff, prison officials refused to send "as legal mail" unspecified letters to the:

- State Law and Legislative Reference Library
- Kennebec County Sheriff
- Center for Public Integrity
- Rockland District Court
- Maine State Controller
- Cumberland County Superior Court
- Kennebec County Superior Court

- Maine Administrative Office of the Courts
- Office of Program Evaluation and Government Accountability, the Maine State Auditor
- Maine Human Rights Commission
- Commissioner of the Department of Corrections
- Public Access Officer
- Maine State Court Administrator
- Maine State Treasurer's Office
- Maine State Controller
- Rockland Police Department
- Department of Environmental Protection
- Governor's Office
- Department of Administrative and Financial Services
- Thomaston Police Department
- Executive Director of the Legislative Counsel

(*Id.* ¶¶ 9 – 11, 14, 19, 23, 24, 27 – 32, 35, 40, 44, 55, 61, 75, 79, 84, 91, 92.)

Plaintiff complains Defendants refused to send the mail "as legal mail," which would require the prison to incur the cost of the mailings. Plaintiff has not asserted any facts to support his contention the mailings consisted of legal mail subject to constitutional protection. To the contrary, the identity of at least some of the alleged intended recipients suggests the mailings did not include confidential communications.

### C.      Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Kosilek v. Spencer,* 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Cruel and unusual punishment consists of the denial of "the minimal civilized measure of life's necessities" assessed based on "the contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

#### 1.      *Filth on a wall*

Plaintiff alleges that on April 7, 2016, Plaintiff was placed in a cell having "someone else's feces on a wall." (Supp. ¶ 1.) He contends wind and rain blew into the cell. Plaintiff asserts he vomited while attempting to clean the wall the following day (April 8, 2016), his heart rate was elevated, and he was taken to medical. Plaintiff maintains when he returned to the cell, he was denied gloves and the necessary cleaning supplies. He also asserts that "various staff" denied him his third shower of the week on April 9 (a Saturday). (*Id.*)

Plaintiff states that Officers Knight and Manning returned him to the cell after his visit to medical, denied him a shower, and denied him gloves, rags, and a mop (but not cleaning chemicals). A few days later, Plaintiff told Captain Howlett what happened and Howlett responded that the staff took appropriate actions. (*Id.*)

11

While unsanitary conditions of confinement can constitute cruel and unusual punishment, actionable cases have involved prolonged exposure to unsanitary conditions, which exposure at a minimum consisted of multiple days. *Hutto v. Finney,* 437 U.S. 678, 686 – 87 (1978) ("[T]he length of confinement cannot be ignored .... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."); *See*, *e.g.*, *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (three days in proximity to human waste without adequate cleaning supplies deemed sufficient to state a non-frivolous claim); *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (affirming entry of summary judgment where plaintiff was subjected to an overflowed toilet for four days). *See also Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.1988) ("limiting inmates to one shower a week does not violate the Eighth Amendment"). Additionally, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, although the alleged conditions can fairly be characterized as unsanitary, the conditions, as alleged, were not excessive and Plaintiff was exposed to them for a relatively short period of time. The type of exposure and duration do not suggest a constitutional violation. Furthermore, Plaintiff has not alleged sufficient facts to support a finding that the prison staff members allegedly responsible for the conditions (staff members Knight, Manning and Howlett) had knowledge of and disregarded a risk of serious harm to Plaintiff's health.

### 2. *Loss of a meal*

Plaintiff asserts that in September 2016, Officer Garth refused to provide Plaintiff with a meal. (*Id.* ¶ 50.) The loss of a meal does not raise a constitutional concern. "[O]ccasionally missing a meal is entirely consistent with the realities of modern life." *Barnett v. Comm'r*, 187 F.3d 621 (1st Cir. 1999) (affirming screening of such a claim).

### 3. *Ventilation*

Plaintiff alleges the vents in his usual cell are extremely dirty and have been for months. (*Id.* ¶¶ 39, 48, 93.) Plaintiff further asserts the Fire Marshall has determined the vents should be cleaned and that excessive dust could present a fire hazard. (Supp. ¶ 48.) While inadequate ventilation can contribute to conditions of confinement capable of violating the Eighth Amendment, *see*, *e.g.*, *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (describing black fiberglass dust that caused nosebleeds), Plaintiff's assertion of dirty vents is insufficient to generate a constitutional concern.

**D. Cruel and Unusual Punishment**

Plaintiff asserts he experienced pain in his shoulder when Officer Garth attempted to shove him into his assigned cell. (*Id.* ¶ 45.) "Generally speaking, after incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The critical question … is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline." *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005) (quotation marks and citation omitted).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9 – 10 (1992) (some internal quotation marks omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 – 38 (2010) (per curiam).

Plaintiff has not alleged any facts regarding the circumstances of the alleged shove, or any other facts to support a finding the contact consisted of the "unnecessary and wanton infliction of pain." *Skinner*, 430 F.3d at 488. Plaintiff, therefore, has not asserted a claim on which he can recover.

**E.    Lost good time**

Plaintiff alleges a unit manager withdrew four days of Plaintiff's earned good time. (*Id.* ¶ 70.) Plaintiff cannot pursue a claim concerning the duration of his confinement without first obtaining state relief or federal habeas relief for his loss of good time. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005); *DeWitt v. Wall*, 121 F. App'x 398, 399 (1st Cir. 2004) (unpublished, per curiam opinion). Plaintiff, therefore, has not asserted an actionable federal claim.

## CONCLUSION

Because Plaintiff's proposed amendment would be futile, I recommend the Court deny Plaintiff's motion to supplement his amended complaint. (ECF No. 46.)

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

>       /s/ John C. Nivison
>       U.S. Magistrate Judge

Dated this 23rd day of February, 2017.