|  |  |  |
|---|---|---|
| STEVE ANCTIL, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00107-JAW |
| | ) | |
| COMMISIONER JOSEPH, | ) | |
| FITZPATRICK, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDED DECISIONS OF THE MAGISTRATE JUDGE

The Court affirms the recommended decisions in this case, except it vacates the recommended decisions insofar as the inmate claims that state officials violated his constitutional right to access to the courts by repeatedly opening his legal mail outside his presence and refusing to allow him to send outgoing legal mail.[1]

## I. PROCEDURAL HISTORY

On February 24, 2016, Steve Anctil, Jr., an inmate in the custody of the Maine Department of Corrections, acting pro se, filed a complaint against Commissioner Joseph Fitzpatrick and a number of subordinate officers, alleging that they wrongfully dismissed, denied, failed to investigate, and failed to respond to his grievances.[2] *Compl.* (ECF No. 1). On March 8, 2016, the Magistrate Judge

---

[1] The Court leniently interpreted the pro se allegations in the Second Amended Complaint to address Defendants' mail-handling practices generally, involving both incoming and outgoing mail. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (The United States Supreme Court holds "the allegations of [a] pro se complaint . . . to less stringent standards than formal pleadings drafted by lawyers"); *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000).

[2] On the same day, Mr. Anctil filed a motion to appoint counsel. *Mot. for Appointment of*

issued a recommended decision, screening the Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and recommending that the Complaint be dismissed. *Recommended Decision After Screening Compl. Pursuant to 28 U.S.C. §§ 1915(e), 1915A* (ECF No. 9). The Magistrate Judge concluded that Mr. Anctil's Complaint was "comprised of a series of conclusory allegations, which are insufficient to sustain a claim." *Id.* at 3. He also observed that even if Mr. Anctil had alleged sufficient facts that the Defendant failed to follow its grievance procedure, Mr. Anctil had not stated a constitutional claim. *Id.* He had only alleged that he had been held in "punitive segregation" for a period of time, and the Magistrate Judge concluded that the mere assignment to segregation does not "constitute an atypical and significant hardship." *Id.* at 5. Mr. Anctil did not make a timely objection to the recommended decision, and on April 5, 2016, the Court issued an order affirming the recommended decision and entered judgment against Mr. Anctil. *Order Affirming the Recommended Decision of the Magistrate* Judge (ECF No. 14); *J.* (ECF No. 15).

However, on the next day, April 6, 2016, Mr. Anctil filed a motion to amend the Complaint. *Mot. to Amend Compl.* (ECF No. 16). The Court granted Mr. Anctil's motion and entered an order vacating the judgment, based on a mail delivery issue that prevented Mr. Anctil from filing on time. *Order Vacating J. and Vacating*

---

Counsel (ECF No. 5). On February 26, 2016, the Magistrate Judge denied Mr. Anctil's motion to appoint counsel. *Order on Pl.'s Mot. to Appoint Counsel (ECF No. 5)* (ECF No. 8). On March 11, 2016, Mr. Anctil objected to the Magistrate Judge's Order. *Obj. to the Denial to Appoint Counsel of Magistrate Judge* (ECF No. 12). The Court reviewed and overruled the objection. *Order Overruling Obj. to Order Denying Mot. to Appoint Counsel* (ECF No. 13).

*Order Affirming Recommended Decision and Ordering Pl. to File Proposed Am. Compl.* (ECF No. 17).

On April 21, 2016, Mr. Anctil submitted a proposed amended complaint. *Am. Compl.* (ECF No. 18). On May 31, 2016, the Magistrate Judge issued a recommended decision regarding the amended complaint. *Recommended Decision After Screening Am. Compl.* (ECF No. 25) (*Rec. Dec. Screening*). In the May 31, 2016 recommended decision, the Magistrate Judge recommended that the Court grant Mr. Anctil another opportunity to amend his complaint, but if Mr. Anctil failed to state an actionable claim in the second amended complaint, the Magistrate Judge recommended that the Court dismiss his claim. *Id.* at 1. Mr. Anctil filed his second Amended Complaint on July 7, 2016.[3] *Second Am. Compl.* (ECF No. 31).

On October 24, 2016, the Magistrate Judge issued a recommended decision on Mr. Anctil's Second Amended Complaint. *Recommended Decision After Screening Compl. Pursuant to U.S.C. §§ 1915(e), 1915A* (ECF No. 36) (*Rec. Dec. 1915*). In the October 24, 2016 recommended decision, the Magistrate Judge recommended that the Court dismiss all claims asserted against all Defendants, except for one claim against Deputy Warden Troy Ross. *Id.* at 1.

Mr. Anctil failed to object in a timely manner to the October 24, 2016 recommended decision, and on December 5, 2016, the Court issued an order affirming the October 24, 2016 recommended decision. *Order Affirming the*

---

[3] On May 31, 2016, Mr. Anctil filed motions for a temporary restraining order (TRO) and for a preliminary injunction. *Mot. for TRO, Mot. for Prelim. Inj.* (ECF. 26) (*Mot. TRO and Inj.*). On July 19, 2016, the Court adopted the Magistrate Judge's recommended decision on the motion for TRO and preliminary injunction, and denied each. *Order Adopting Report and Recommended Decision for Mot. for TRO and Mot. for Prelim. Inj.* (ECF No. 32).

*Recommended Decision of the Magistrate Judge* (ECF No. 39). However, on January 9, 2017, Mr. Anctil moved for relief from the December 5, 2016 Order, and on January 10, 2017, the Court granted his motion and vacated the December 5, 2016 order affirming the recommended decision. *Mot. for Relief from Ct. Order* (ECF No. 43); *Order Vacating Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 45).

On January 20, 2017, Mr. Anctil moved for leave to supplement his pleadings. *Mot. to Req. Leave to Suppl. Pleadings* (ECF No. 46). On February 23, 2017, after Mr. Anctil filed a motion to extend time, the Magistrate Judge issued another recommended decision, recommending that the Court deny Mr. Anctil's motion to supplement pleadings on the ground that to do so would be futile. *Mot. to Extend Time to Object to Report and Recommended Decision* (ECF No. 49); *Recommended Decision on Pl.'s Mot. for Leave to Amend* (ECF No. 53) at 2 (*Rec. Dec. Leave Amend*).[4]

On February 28, 2017, Mr. Anctil objected to the Magistrate Judge's recommended decision dated October 24, 2016. *Pl.'s Obj. to Recommended Decision* (ECF No. 54) (*Pl.'s Obj.*). On May 15, 2017, Mr. Anctil filed an objection to the Magistrate Judge's February 23, 2017 recommended decision on Mr. Anctil's motion for leave to amend his Second Amended Complaint. *Pl.'s Obj. to Recommended Decision* (ECF No. 65) (*Pl.'s Leave Obj.*).

---

[4]     Whether to grant a motion to amend a pleading is within a magistrate judge's authority. *Maurice v. State Farm Mut. Auto. Inc. Co.*, 235 F.3d 7, 9n.2 (1st Cir. 2000). However, the Magistrate Judge issued the February 23, 2017 order as a recommended decision to afford this Court an opportunity to review both the recommended decision to dismiss and the denial of the motion to amend applying the same standard to each. *Rec. Dec. Leave Amend* at 1n.1.

The upshot of all of these motions, orders, and objections is that there are two objections to recommended decisions before the Court. The first is Mr. Anctil's objection to the October 24, 2016 recommended decision in which the Magistrate Judge recommended that all his claims be dismissed except for the failure to protect (based on failure to train) claim against Defendant Troy Ross. *Pl.'s Obj.* at 1-20. The second is Mr. Anctil's objection to the February 23, 2017 recommended decision in which the Magistrate Judge recommended against allowing Mr. Anctil to file a third amended complaint on the ground that to do so would be futile. *Pl.'s Leave Obj.* at 1-10.

## II. DISCUSSION

### A. October 24, 2016 Recommended Decision

In the October 24, 2016 recommended decision, the Magistrate Judge extensively reviewed in detail each of the allegations in Mr. Anctil's Second Amended Complaint and, except for the failure to protect (based on failure to train) claim against Defendant Ross, concluded that they did not contain sufficient facts to state viable claims. *Rec. Dec. 1915* at 1-20. In his objection, Mr. Anctil attempted to fill in the blanks in his Second Amended Complaint by adding a plethora of detail. *Pl.'s Obj.* at 1-20. In ruling on the sufficiency of the Second Amended Complaint, however, the Magistrate Judge was required to analyze the actual allegations in the Second Amended Complaint, not the allegations Mr. Anctil added in his objection after the Magistrate Judge made his recommendation. Moreover, as Mr. Anctil's objection comes to the Court through the recommended decision process, it has long

been the rule in this Circuit that litigants "must take before the magistrate, 'not only their best shot, but all of their shots.'" *Bordon v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 2002) (per curiam) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984)). Here, Mr. Anctil framed the allegations in his Second Amended Complaint having been given a third opportunity to state viable claims, and the Magistrate Judge must consider what Mr. Anctil alleged in his Second Amended Complaint, not what he could have alleged. Upon conducting a review of the Second Amended Complaint, the Court determines that Mr. Anctil has pleaded sufficient facts to state a plausible claim for relief with respect to his legal mail. Accordingly, the Court affirms the Magistrate Judge's October 24, 2016 recommended decision, with the exception of the recommendation to dismiss the claims pertaining to the alleged improper handling of his legal mail.

> ### 1. Legal Mail Pertaining to Plaintiff's Efforts to Challenge the Conditions of his Confinement

The right of prisoners to reasonable, effective access to the courts is firmly established. *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980) (collecting United States Supreme Court cases); *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986). "Th[is] right of access to the courts, in the context of prisoners, is addressed only to a prisoner's right to attack his conviction and his right to challenge the conditions of his confinement. 'Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

incarceration.'" *Riva v. Brasseur*, 2016 WL 9650983, at *1 (1st Cir. Sep. 12, 2016) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original)). A prisoner's exercise of this right to access the courts very often implicates the related right to communicate via mail on these matters. *See Nolan v. Scafati*, 430 F.2d 548, 550–51 (1st Cir. 1970).

"[I]n determining whether correspondence is legal mail, the issue does not turn on whether there is an existing attorney-client relationship regarding an on-going legal matter; rather, the key issue is whether the attorney and inmate have a fundamental interest in maintaining the confidentiality of communications relating to a legal matter." *Schoff v. Fitzpatrick*, No. 2:16-cv-00609-NT, 2017 WL 1507446, at *1 (D. Me. April 27, 2017) (quoting *ACLU Fund of Mich. v. Livingston Cty*, 796 F.3d 636, 644–45 (6th Cir. 2015)).[5]

While Mr. Anctil does not allege that any of the mail opened outside his presence was sent from his attorney, he does allege that some of the mail from others addressed his efforts to challenge the conditions of his confinement.[6] It appears that the senders, including governmental entities and a legal nonprofit organization, sent the mailings to Mr. Anctil in response to his prior

---

[5]    In *Livingston County*, the Sixth Circuit affirmed an Eastern District of Michigan preliminary injunction against the County's enforcement of its jail mail policy. County jail personnel opened twenty-five identical letters sent from the ACLU to twenty-five different prisoners inviting them to talk to the ACLU about being a part of an effort to challenge the mail policy. The Sixth Circuit rejected the defendants' argument that legal mail requires an existing attorney-client relationship. It embraced a standard of "impacts upon or has import for the prisoner's legal rights" for defining "legal mail," and concluded broadly that "[m]ail from an attorney, however, is legal mail as a matter of law because 'unimpaired, confidential communication with an attorney is an integral component of the judicial process.'" *Livingston Cnty*, 796 F.3d at 643 (quoting *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003)).

[6]    The family law matters that are the subject of some of Mr. Anctil's allegations fall outside the scope of the relevant constitutionally-protected right to access the courts. *See Riva*, 2016 WL 9650983, at *1 (quoting *Lewis*, 518 U.S. at 355).

communications.  *Second Am. Compl.* at 4 ("[L]egal mail from the Maine Human Rights [Commission][7] regarding legal materials I requested for future condition of confinement claims . . . "; "legal mail from the Office of Program Evaluation and Government Accountability, regarding my letters to Director Beth Ashcroft concerning my attempts to obtain legislative sponsorship for a review of conditions of confinement issues . . . " *id.*; "legal mail from the Office of Civil Rights, regarding a complaint of discrimination I filed . . . " *id.* at 6; "legal mail from the Center for Constitutional Rights, regarding my request to them for assistance with condition of confinement issues . . . " *id.* at 7.).  Communications about conditions of confinement between Mr. Anctil and these correspondents support an inference that Mr. Anctil and the senders of the opened mailings had a fundamental interest in the confidentiality of the contents of their mailings.  While Mr. Anctil fails to provide further detail about the contents of these mailings, the Court finds that Mr. Anctil has pleaded a sufficient nexus between his efforts to challenge the conditions of confinement and these communications to allow the mailings to be considered legal mail.[8]

In a per curiam opinion, *Gallant v. Delahanty*, 43 F.3d 1456 (Table), 1994 WL 697283 (1st Cir. 1994), the Court of Appeals for the First Circuit considered a prisoner's appeal from a district court order dismissing all his civil rights claims.

---

[7]      Mr. Anctil uses the term, "Human Rights Committee".  The Court assumes he must be referring to the Maine Human Rights Commission and has inserted the presumably correct name.
[8]      The First Circuit vacated a dismissal of a prisoner's § 1983 suit, in which he alleged a "'tampering' with his legal mail." *Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980).  Despite the fact that the prisoner's legal mail allegations were nothing more than "bald assertions, devoid of factual explication," the First Circuit held that, taken together, the prisoner's various claims were sufficient to state a claim.  *Id.*

Among his claims were allegations that prison officials had tampered with and opened his legal mail. *Compl.* at 15, 17, 18, *Gallant v. Delahanty*, (D. Me. Jun. 2, 1994) No. 1:94-cv-00138-FJB. In vacating the order and remanding the case to give the plaintiff an opportunity to amend his complaint, the Court said that "[d]epending on how the facts were fleshed out, conceivably a constitutional claim could exist, if, for example, incoming legal mail were opened with some regularity outside plaintiff's presence." *Gallant*, 1994 WL 697283, at *2 (citing *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993) (reversing § 1915 dismissal of inmate complaint, which alleged that three letters from public officials received in an eight-month period had been opened, because a colorable constitutional claim had been stated)).

As an outgrowth of constitutional standing doctrine, plaintiff-prisoners generally must show how their legal mail claims hindered their pursuit of their legal claims. *Lewis*, 518 U.S. at 349–51. Courts have held that a chilling effect on an inmate's access to the courts can be cognizable as such a hindrance. *See Muhammad v. Pritcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (holding unconstitutional a Michigan Department of Corrections policy that treated incoming correspondence from the State Attorney General's Office as ordinary mail rather than legal mail; "a prisoner who suspects that a grievance may not remain confidential may fear retaliation by a corrections officer. . . . It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact").

In *Smith v. Robbins*, 454 F.2d 696 (1st Cir. 1972), the First Circuit affirmed the district court's order in a class-action suit, 328 F. Supp. 162 (D. Me. 1971), requiring that mail from attorneys be opened in the presence of the Maine state prisoners. The First Circuit explained, " . . . that a prisoner, and possibly some attorneys, may feel, if only to a small degree, that someone in the chain of command may not be trusted, and that the resulting fear may chill communications between the prisoner and his counsel." *Smith*, 454 F.2d at 697; *see also Donovan v. Magnusson*, 1:04-cv-00102-JAW, 2005 WL 757585, at *10–12 (D. Me. Mar. 11, 2005) (recurring pattern of prison officials opening legal mail outside of prisoner's presence had potential to chill prisoner's exercise of his First Amendment rights).

In *Nolan v. Scafati*, 430 F.2d 548 (1st Cir. 1970), the First Circuit vacated a district court order that had dismissed a prisoner's § 1983 claims—some based on a prison officials' alleged interference with legal mail. The First Circuit stated that the plaintiff "unambiguously charges that he was denied access to the courts when the prison officials refused to mail his letter to the Massachusetts Civil Liberties Union; this, we think, states a claim upon which relief may be granted." *Id.* at 550. In *Nolan*, the First Circuit reviewed the law concerning an inmate's right to access to the courts and observed that in *Johnson v. Avery*, 393 U.S. 483 (1969), the United States Supreme Court had held that "a state could not prevent one inmate from assisting another inmate in the preparation of his writ." *Nolan*, 430 F.2d at 551. In light of this caselaw, the First Circuit wrote, "we fail to see how a state, at least in the absence of some countervailing interest not here appearing, can prevent an

10

inmate from seeking legal assistance from bona fide attorneys working in an organization such as the Civil Liberties Union." *Id.* The *Nolan* Court concluded, "[t]hat prison inmates do not have all the constitutional rights of citizens in society—and may hold some constitutional rights in diluted form—does not permit prison officials to frustrate vindication of those rights which are enjoyed by inmates . . . " *Id.* Correspondence with other lawyers can also chill access to justice. *Schoff v. Fitzpatrick*, No. 2:16-cv-00609-NT, 2017 WL 1507446, at *1 (D. Me. Apr. 27, 2017) (conducting § 1915 review and permitting legal mail claim to proceed based on prison-official interference with two outgoing pieces of legal mail addressed to prosecutor).

The Court concludes that Mr. Anctil pleaded sufficient facts to avoid dismissal at this stage of claims related to prison officials repeatedly opening outside his presence his legal mail that addressed his efforts to challenge the conditions of his confinement.

### 2. Library Access

Although the Court agrees with the Recommended Decision's reasoning and conclusions with respect to Mr. Anctil's library access issues, there is an additional basis for dismissing these claims. The actual injury requirement under *Bounds v. Smith*, 430 U.S. 817 (1977) is met only by a denial of legal tools necessary to file non-frivolous claims attacking one's conviction and/or sentences, and/or to challenge the conditions of one's confinement. *Riva*, 2016 WL 9650983, at *1 (citing *Lewis*, 518 U.S. at 354–55 (concluding that inadequacies in prison law library that did not

significantly impair prisoners' abilities to attack their convictions or challenge the conditions of their confinement did not violate prisoners' right to access the courts)). Denial of access to libraries and library materials necessary to litigate other matters, such as the family law matter Mr. Anctil mentions, does not constitute an actual injury that could sustain a claim under *Bounds* as clarified by *Lewis*.

**B.     February 23, 2017 Recommended Decision**

The Court turns next to Mr. Anctil's objection to the Magistrate Judge's February 23, 2017 recommended decision in which he recommended that the Court deny Mr. Anctil's motion for leave to amend to file a third amended complaint. Because the Court has recognized that Mr. Anctil stated a plausible claim for relief pertaining to the alleged mishandling of his legal mail in the Second Amended Complaint, the Court allows Mr. Anctil to plead further facts thereon.  However, with respect to all aspects of Mr. Anctil's motion for leave to amend other than those relating to incoming and outgoing legal mail, it agrees with the Magistrate Judge's recommended decision and briefly elaborates on its rationale.

First, Mr. Antil urges the Court to review his motion under Federal Rule of Civil Procedure 15(d), not 15(a)(1), because he says the newest complaint sets forth events that happened since the date of the pleading sought to be amended.  *Pl.'s Leave Obj.* at 1.  It does not matter.[9]  The basis of the Magistrate Judge's

---

[9]     Mr. Anctil filed his Second Amended Complaint on July 7, 2016.  *Second Am. Compl.*  Mr. Anctil's proposed Third Amended Complaint recites events beginning on April 12, 2016 and continuing through January 4, 2017 so he is in part right and in part wrong about the allegations in his proposed Third Amended Complaint being allegations about events that took place only after the filing of his Second Amended Complaint.

recommendation is that the amendment would be futile, and futile amendments are not allowed under either subsection (a)(1) or (d) of Rule 15.

Next, Mr. Anctil reiterates his earlier allegations and adds further detail. *Pl.'s Leave Obj.* at 1-10. As with his other objection to the Magistrate Judge's recommended decision, Mr. Anctil is not allowed to present allegations to this Court that he could have presented to the Magistrate Judge.

Third, for the reasons the Magistrate Judge explained, Mr. Anctil's additional allegations do not meet the legal standards for a violation of his constitutional rights. *See Rec. Dec. Leave Amend* at 1-14. Therefore his requested amendment or supplementation, however described, would be futile. *Id.*

## III. CONCLUSION

The Court reviewed and considered the Magistrate Judge's Recommended Decisions, together with the entire record; the Court made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decisions; and the Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decisions and as set forth further herein, with the exception of the recommendation to dismiss Mr. Anctil's claims related to his legal mail, and only that legal mail which pertains to Plaintiff's efforts to challenge the conditions of his confinement.

1. It is therefore <u>ORDERED</u> that the Recommended Decision After Screening Complaint Pursuant to 28 U.S.C. §§ 1915(e), 1915A (ECF No. 36) by the Magistrate Judge be and hereby is <u>AFFIRMED IN PART</u> and <u>REJECTED IN PART</u> and the Court <u>DISMISSES</u> all claims in Plaintiff's Second Amended Complaint, except (1) his claim against Defendant Troy Ross for an alleged failure to protect

(based on failure to train), and (2) his claims of inadequate access to the courts only insofar as they pertain to the Defendants' alleged failure to properly handle the Plaintiff's incoming and outgoing legal mail pertaining to Plaintiff's efforts to challenge the conditions of his confinement.

2. It is therefore ORDERED that the Plaintiff's Objection to Report and Recommended Decision (ECF No. 54) be and hereby is GRANTED IN PART and DENIED IN PART. It is granted only with respect to claims regarding incoming and outgoing legal mail pertaining to Plaintiff's efforts to challenge the conditions of his confinement. The Complaint is hereby deemed to incorporate only these elements of Plaintiff's Motion to Request Leave to Supplement Pleadings.

3. It is further ORDERED that the Recommended Decision on Plaintiff's Motion for Leave to Amend (ECF No. 53) by the Magistrate Judge be and hereby is AFFIRMED IN PART and REJECTED IN PART and the Court DISMISSES without prejudice Plaintiff's Motion to Request Leave to Supplement Pleadings (ECF No. 46).

4. It is further ORDERED that the Plaintiff's Objection to the Report and Recommended Decision (ECF No. 65) be and hereby is GRANTED IN PART and DENIED IN PART. It is granted only with respect to claims regarding incoming and outgoing legal mail pertaining to Plaintiff's efforts to challenge the conditions of his confinement. The Complaint is hereby deemed to incorporate only these elements of Objection to the Report and Recommended Decision.

The Court instructs the Clerk's Office to prepare the required documents for service of the Second Amended Complaint against Commissioner Joseph Fitzpatrick, Warden Rodney Bouffard, and Warden Randall Liberty.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2017