UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVE ANCTIL, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00107-JAW |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTION TO DISMISS OF DEFENDANT TROY ROSS

In this action, Plaintiff Steve Anctil, an inmate at the Maine State Prison, alleges that Defendant Troy Ross was deliberately indifferent to a known risk that Plaintiff would be seriously harmed by one or more inmates in his cell block.

The matter is before the Court on the Motion to Dismiss of Defendant Troy Ross. (Motion, ECF No. 70.) Through his motion, Defendant Ross argues Plaintiff's allegations are insufficient to generate a plausible inference that he had knowledge that Plaintiff was exposed to a serious risk of harm, or that his subordinates required training or guidance on the need to protect inmates from threats posed by other inmates.[1] (Motion at 2 – 4.)

After consideration of the parties' arguments, I recommend the Court deny the motion to dismiss.

---

[1] Following its review under 28 U.S.C. § 1915(e) and § 1915A, the Court concluded that Plaintiff stated a deliberate indifference/failure to protect claim and authorized service on Defendant Ross based on allegations that Defendant Ross provided inadequate training and/or supervision to officers responsible for Plaintiff's pod. (Recommended Decision After Screening Complaint, ECF No. 36; Order Adopting In Part Report and Recommendation, ECF No. 68.)

## Background

In Plaintiff's amended complaint (Second Am. Compl., ECF No. 31), Plaintiff alleges that in September 2014, he was relocated to "Charlie Pod" (C-pod) even after notifying the pod officer that he believed he would not be safe in that pod. According to Plaintiff, the officer made a phone call, and then told him he "had to move anyway." (*Id.*, Statement of Claim at 1, ECF No. 31-1.) A week later, Plaintiff was assaulted by an inmate in C-pod with "two combination locks on a belt, and stabbed in the chest" by another inmate. (*Id.* at 1 – 2.) Several days later, Plaintiff addressed his concerns "with staff." (*Id.* at 2.) In November 2014, Plaintiff was again assaulted by the same inmate. (*Id.*) In May 2015, Plaintiff informed Defendant Fitzpatrick that he was told that he would be stabbed again and in June 2015, Defendant Ross responded that Plaintiff's concerns did not require as review as he had created his issues. (*Id.*)

In his response to Defendant Ross's motion to dismiss, Plaintiff set forth a number of additional factual allegations in support of his failure to protect claim. Given Plaintiff's pro se status, the Court may consider factual allegations asserted for the first time in a response to a motion to dismiss in order "to understand the nature and basis for his claims." *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In his response to the motion to dismiss, Plaintiff asserts that an inmate assaulted him in March 2014, while he was assigned to the Close Unit of C-pod. (Response at 2, ECF No. 75.) Plaintiff reports that someone informed Shift Commander Kenneth Vigue that Plaintiff may not be safe if he continued to be assigned to C-pod. (*Id.*) Plaintiff maintains that Mr. Vigue moved him to A-pod, on emergency observation status, and directed that he not return to C-pod based on

the information Mr. Vigue obtained from an undisclosed source. (*Id.*) According to Plaintiff, Close Unit Manager Antonio Mendez told Plaintiff that he was not happy with Mr. Vigue's decision, and that at the next team meeting, he would vote for Plaintiff's return to C-pod. (*Id.*) Evidently the staff decided not to return Plaintiff to C-pod, and he remained elsewhere for several months. (*Id.*) In October 2014, Unit Manager Mendez informed Plaintiff that Mendez heard other prisoners making death threats against Plaintiff and that Plaintiff would be restricted to his housing area pending an investigation. (*Id.*)

At all relevant times, Defendant Ross was the Deputy Warden of Security/Operations. (*Id.*) Plaintiff alleges that Defendant Ross would have received a report from Mr. Vigue in March 2014, regarding the threats against Plaintiff (*Id.* at 3), a report in September 2014, regarding the September incident in which Plaintiff was attacked, and a report in October 2014, regarding the death threats against Plaintiff received by Close Unit Manager Mendez. (*Id.*) Plaintiff further alleges that Defendant Ross knew that his subordinates would need to address situations in which a prisoner's safety is at risk due to other prisoners, and that training and supervision were necessary to minimize and manage the risk. (*Id.* at 4.)

**Discussion**

"The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.'" *Rodríguez– Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 569 n. 14). Prisoner's claims, while subject to certain requirements

under the Prison Litigation Reform Act, are otherwise evaluated in accord with "the usual procedural practice." *Jones v. Bock*, 549 U.S. 199, 214 (2007). The Supreme Court has specifically disavowed the application of heightened pleading requirements in civil rights litigation. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). Accordingly, "[a]ll civil rights actions are subject to [Fed. R. Civ. P.] 8(a)'s notice pleading regime." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 67 (1st Cir. 2004).

In the motion to dismiss, Defendant Ross argues that Plaintiff has not alleged facts upon which a fact finder could reasonably conclude that Defendant Ross had notice of a serious risk to Plaintiff, but failed to take reasonable measures to protect Plaintiff from harm. Notably, the authority upon which Defendant relies to support his request for dismissal based on the lack of notice involved cases decided at summary judgment. (Motion to Dismiss at 2 – 3, citing *Klebanowski v. Sheahan*, 540 F.3d 633 (7th Cir. 2008); *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002); *Robinson v. Cavanaugh*, 20 F.3d 892, 894 (8th Cir. 1994); *Brown v. Corsini*, 657 F. Supp. 2d 296 (D. Mass. 2009). At this stage of the proceedings, unlike a summary judgment, the issue is whether Plaintiff has alleged sufficient facts from which one could infer that Defendant Ross was aware of the threats to Plaintiff's safety, yet failed to take appropriate action to protect him. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("Having incarcerated persons with demonstrated proclivities for antisocial, criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.") (internal quotations omitted);

4

*Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002) (focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response."); *Otero v. Commonwealth of Puerto Rico Indus. Comm'n*, 441 F.3d 18, 20 (1st Cir. 2006) ("We accept as true all well-pleaded facts alleged by plaintiff in his complaint and draw in his favor all reasonable inferences fitting his stated theories of liability.").

As alleged by Plaintiff, prior to the alleged assault on September 18, 2014, Defendant Ross would have been on notice of threats made to Plaintiff's safety, and at the time of the November 2014 assault, Defendant Ross would have received reports of the March 2014 threat, the September 2014 assault, and the October 2014 death threats against Plaintiff. Plaintiff further alleges that despite this information, Defendant Ross did not relocate Plaintiff or otherwise take measures to provide for his safety. The alleged facts are sufficient to state an actionable claim for deliberate indifference.

Defendant Ross also contests the sufficiency of Plaintiff's allegations regarding training or supervision. Specifically, Defendant argues:

> He has not identified the officer or officers whose conduct led to the alleged violation of his Eighth Amendment rights, the manner in which their conduct was deficient, what deficiencies in their training caused Anctil's alleged injuries, whether Ross was responsible for training them, whether Ross was aware of any deficiencies in the officers' training and, if so whether he was deliberately indifferent to a substantial risk that the deficiencies would lead to the harm that allegedly eventuated.

(Motion at 5.) While Plaintiff did not identify in his amended complaint the officer or officers with whom he discussed his fears or who were otherwise on notice of the risk to his safety, Defendant has not cited any authority to suggest Plaintiff is required to plead with such particularity. In addition, in his response to the motion to dismiss, Plaintiff

identified two of the officers involved, and Plaintiff has alleged the officers in the unit knew he was at risk, but failed to take adequate precautions, even after an assault. Given that Plaintiff has alleged he was assaulted on two occasions, two months apart, by the same inmate, despite notice that Plaintiff was at risk, Plaintiff has alleged facts, which in the context of a motion to dismiss, are sufficient to assert an actionable claim that the training and supervision of the officers were deficient, and that Defendant Ross was deliberately indifferent to Plaintiff's safety in his failure to supervise or train the officers.

## Conclusion

Based on the foregoing analysis, I recommend the Court deny the Motion to Dismiss of Defendant Troy Ross. (ECF No. 70.)

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of December, 2017.